UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**FORBING BLUFF TIMBER COMPANY, LLC ET AL**  CIVIL ACTION NO. 21-1823

**VERSUS**  JUDGE EDWARDS

**KINDERHAWK FIELD SERVICES, LLC**  MAG. JUDGE HORNSBY

### MEMORANDUM RULING

This dispute arises from a December 30, 2011, Pipeline Right of Way Agreement ("RoW Agreement") between plaintiffs Forbing Bluff Timber Company LLC, Forbing Properties, LLC, and Margaret L. Norton Living Trust (collectively, "Plaintiffs") and defendant Kinderhawk Field Services LLC ("Kinderhawk"). The parties agreed to submit this matter for resolution by the Court through briefs and a Joint Stipulation of Facts.[1] For the reasons set forth below, the Court will enter judgment in favor of the Plaintiffs.

**FACTS**

The RoW Agreement granted Kinderhawk the right to construct, maintain, and operate two pipelines and related facilities on the Plaintiffs' property. The total area of the property subject to the RoW Agreement is 87,009 square feet. Plaintiffs received $1,305,150 for the acreage covered by the right of way. Further, plaintiff Forbing Properties, LLC received $394,000 for a new fence on the property and

---

[1] R. Doc. 32.

$120,000 for a new water well on the property. In sum, Plaintiffs received $1,819,000 in total compensation related to the RoW Agreement.

Pursuant to the RoW Agreement, Kinderhawk constructed two pipelines and a Delta 7-1 Pigging Station on Plaintiffs' property. The construction was completed in early 2012 and the facilities went into service on March 3, 2012.

The RoW Agreement obligated Kinderhawk to furnish Plaintiffs an "as-built" survey which describes the boundaries of the servitude, the location of fences and gates built on the property, and an aerial overlay depicting the location of the pipelines and any related facilities (collectively, "As-Built Survey"). Kinderhawk was obligated to furnish the As-Built Survey within sixty (60) days after construction was completed.[2] Kinderhawk did not deliver the As-Built Survey until February 25, 2022, approximately 10 years after construction.

Upon review of the As-Built Survey, Plaintiffs discovered that portions of the two pipelines exceeded the land designated for Kinderhawk's use in the RoW Agreement. Specifically, Kinderhawk exceeded the allotted property by 5,794.48 square feet.

The RoW Agreement obligated Kinderhawk to prevent "all substances, odors, fumes, and gaseous substances from escaping the [p]ipeline[s]."[3] Kinderhawk hired a consultant to address surface staining of an area at the pigging station constructed on the RoW property. The consultant reported *de minimus* surface staining and

---

[2] Id. *See RoW Agreement paragraph 5.10.*
[3] Id. *See RoW Agreement paragraph 5.13.*

recommended a remedial course of action, which included the removal and replenishing of stained rock and soil.

The RoW Agreement also obligated Kinderhawk to "mow the entirety of the [p]ipeline [s]ervitude at least once a month during the period of March through October and as requested by [Plaintiffs] during the period of November through February."[4] Despite this provision, Plaintiffs' employees and contractors mowed the property covered by the RoW Agreement from the summer of 2012 through March 2021. Kinderhawk began mowing in April 2021 through a contractor, Putnam Restoration, at a rate of $1,285.00 per mowing after having received several quotes from potential contractors ranging from $1,285.00 to $3,200.00.

Plaintiffs assert that Kinderhawk breached four (4) of its obligations under the RoW Agreement but that since filing this suit, two (2) items of breach - the failure to provide an As-Built Survey within sixty (60) days of construction and Kinderhawk's responsibility to restore the surface - have been resolved.[5] Plaintiffs do not seek any damages associated with these items, but they do seek attorney fees pursuant to the RoW Agreement for enforcing these obligations. Plaintiffs also request judgment against Kinderhawk directing it to complete restoration of the surface as recommended by Kinderhawk's consultant.[6] Kinderhawk did not specifically respond to Plaintiffs' request on these items.

---

[4] Id. *See RoW Agreement paragraph 5.5.*
[5] Doc. 33.
[6] Doc. 33.

The remaining dispute centers on two issues: 1) compensation to Plaintiffs for Kinderhawk's use of property that exceeded the area in the RoW Agreement as reflected in the As-Built Survey, and 2) compensation to Plaintiffs for mowing the property from 2012 through March 2021.

**LAW AND ANALYSIS**

    a. **Value of Excess Property**.

As discussed above, the As-Built Survey revealed that Kinderhawk constructed portions of its pipelines beyond the designated boundaries of the RoW servitude by 5,794.48 square feet. The parties agree that, under Louisiana law, Plaintiffs are entitled to the value of the additional servitude. The parties differ as to how to the Court should calculate that value.

Plaintiffs assert the value should be $20.90 per square foot. Plaintiffs base this value on the total compensation of $1,819,000 paid by Kinderhawk in the RoW Agreement. This includes the amount paid for the 87,009 square feet of acreage ($1,305,150), and the amount paid to Forbing Properties, LLC to erect a fence ($394,000) and install a water well ($120,000). This calculation results in an award of $121,104.63 for the excess acreage ($20.90 x 5,794.48).

Kinderhawk counters that the value should be $15.00 per square foot based solely on the amount it paid Plaintiffs for the 87,009 square feet of acreage covered by the RoW Agreement ($1,305,150). Kinderhawk asserts that the amount paid to Forbing Properties, LLC to erect a fence and install a water well is irrelevant to the

value of the additional acreage. This calculation results in an award of $86,917.20 for the additional acreage ($15.00 x 5,794.48).[7]

The Court agrees with Plaintiffs' proposed valuation. The original bargain for the RoW Agreement was $1,819,000 in total compensation. A calculation for property to be added into this RoW Agreement cannot be based on less than the amount required to enter into the original agreement. The Court declines Kinderhawk's invitation to parse the amounts paid for the acreage, fence and well because there is no evidence that Plaintiffs would have entered into the RoW Agreement for any of these amounts alone. To the contrary, it is undisputed that Kinderhawk paid $1,819,000 for the RoW Agreement. Thus, the Court will set the value for the additional 5,794.48 acreage at $20.90 for an award of $121,104.63.

### b. Calculation of Damages related to Mowing.

The Court must next determine whether Plaintiffs are entitled to damages for Kinderhawk's failure to mow the property and if so, the amount of those damages. The RoW Agreement required Kinderhawk to mow the property at least once a month during the period of March through October and as requested by Plaintiffs during the period of November through February. It is undisputed that Kinderhawk did not fulfill this obligation until April 2021, and that from the summer of 2012 through March 2021, Plaintiffs mowed the property through their own employees and contractors.

---

[7] R. Doc. 34, p.5.

Plaintiffs contend that they are entitled to damages for Kinderhawk's breach of its obligation to mow the property from July 2012 through March 2021 for a total of sixty-nine (69) mowings.[8] Plaintiffs further contend that the Court should exercise its discretion and calculate their damages to be $2,242.50 per mowing based on the average of the quotes Kinderhawk received from contractors to mow the property, $1,285.00 to $3,200.00.[9]

Kinderhawk disputes that Plaintiffs are owed any damages for mowing during this period arguing that "[p]laintiffs have not presented valid evidence of their damages."[10] Kinderhawk asserts that Plaintiffs fail to establish any injury without evidence of "out-of-pocket amounts paid" and "percentage of time" dedicated to mowing the property because Plaintiffs' employees and contractors were already maintaining property owned by Plaintiffs. Kinderhawk also argues that aerial photographs show that "the RoW property is devoid of grasses to be mowed" prior to October 2014 and therefore, in the event the Court finds that Plaintiffs are entitled to damages, the number of mowings should be limited to forty-four (44) starting from that date.[11]

The Court finds that Plaintiffs are entitled to damages arising from Kinderhawk's failure to mow the property. It is undisputed that Kinderhawk undertook this obligation, failed to perform, and Plaintiffs fulfilled this obligation

---

[8] R. Doc. 33, p. 7. Plaintiffs arrive at this number by counting 4 mowings in 2012, July through October; 8 mowings each year from 2013 through 2020, March through October; and 1 mowing in March 2021.
[9] R. Doc. 33, p.8.
[10] R. Doc. 34 at 6.
[11] R. Doc. 34, p.8. The Court notes that Kinderhawk asserts this number to be 44, but based on its brief the number would be 50 by counting 1 mowing in October 2014; 8 mowings each year from 2015 through 2020, March through October; and 1 mowing in March 2021.

themselves through their own employees and contractors. The Court finds that the payment of Plaintiffs' employees and contractors and the allocation of their time to mow this property is an injury sustained directly as a result of Kinderhawk's failure to perform this obligation.[12]

The Court will calculate damages based on sixty-nine (69) mowings. Kinderhawk's assertion that it had no obligation to mow the property based on aerial photographs which show the alleged lack of vegetation asks the Court to apply an exemption in the RoW Agreement that does not exist. The unambiguous terms of the RoW Agreement require Kinderhawk to mow the property on a monthly basis from March through October each year, without an exemption for whether there is sufficient grass to mow. Further, it is stipulated that if a trial were held, Plaintiffs would produce uncontroverted testimony that they undertook the obligation to mow the property beginning in the summer of 2012.

Kinderhawk contracted with Putnam Restoration in 2021 to mow the RoW property at a rate of $1,285 per mowing.[13] The Court considers this figure to be a reasonable basis for which to calculate the Plaintiffs' damages. Accordingly, Plaintiffs are entitled to $88,665; the sum of 69 payments of $1,285.

---

[12] "To prove a breach of contract under Louisiana law, a party must show that: (1) the obligor had an obligation to perform; (2) the obligor failed to perform; and (3) the obligee sustained injury as a result of the obligor's failure to perform." *Chinook v. Duck Commander, Inc.*, 2017 WL 1731728, at *4 (W.D. La. May 2, 2017).
[13] R. Doc. 32, p.4.

    **c.    Interest**

The parties dispute when interest should run on Plaintiffs' claims. Plaintiffs assert that interest began to accrue on March 3, 2012, when the construction was completed and Kinderhawk's facilities became operational and exceeded the right of way boundaries. Kinderhawk asserts that interest began to run on July 1, 2021, the day Plaintiffs filed their state court petition. The Court will award interest from the date of judicial demand, July 1, 2021.

    **d.    Attorneys' Fees**

The RoW Agreement provides for the recovery of "all reasonable fees and expenses, including without limitation, all reasonable attorneys' fees," incurred by the Plaintiffs in bringing a lawsuit to enforce the provisions of the agreement.[14] There is no dispute that Plaintiffs are entitled to attorneys' fees. As set forth below, the Court will afford the parties an opportunity to address the appropriate amount to be awarded.

**CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Kinderhawk shall complete remediation of the surface staining pursuant to the remedial course of action recommended by its consultant, which included the removal and replenishing of stained rock and soil.

**IT IS FURTHER ORDERED** that Plaintiffs are entitled to an award of $121,104.63 for the value of the excess property beyond the right of way boundaries

---

[14] R. Doc. 32, p.4. *See also Paragraph 9.4 of the RoW Agreement.*

and to $88,665 as damages for Kinderhawk's breach of its mowing obligation with judicial interest from the date of judicial demand, July 1, 2021.

**IT IS FURTHER ORDERED** that Plaintiffs are entitled to reasonable expenses and attorneys' fees.

**IT IS FURTHER ORDERED** that within 14 days, Plaintiffs shall submit a proposed judgment consistent with this Ruling and provide an affidavit to support the calculation of the attorney fees and expenses to be included in the judgment. Kinderhawk will have 14 days to traverse the proposed judgment and affidavit before judgment is entered.

**THUS DONE AND SIGNED** in Chambers this 26th day of February, 2025.

*[Signature: Jerry Edwards, Jr.]*

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**